## PennDOT v. George

*Lee C. Silverman, assistant counsel,* for the Commonwealth.
*Richard R. Fink,* for defendant.

McANDREWS, *J.,* August 25, 1993—This matter is before this court upon petitioner's appeal from the Department of Transportation's official notice, dated May 6, 1993, suspending her driving privilege for one year. A hearing was held before this court on July 28, 1993. For the following reasons, the order suspending petitioner's driving privilege is overruled.

On April 10, 1993, petitioner was placed under arrest for driving under the influence of alcohol and/or a con-

trolled substance. At the hearing, the arresting officer testified that he explained to petitioner the implied consent law contained in section 1547(a) of the Vehicle Code[1] and told her that if she refused to submit to a chemical test her driver's license would be suspended for one year. The officer asked petitioner to take a blood test and a urine test. Petitioner agreed to go to the hospital and submitted to a test of her blood. The blood test yielded a result in excess of .10 percent. Petitioner declined to submit to a test of her urine and, as a result, the suspension order was issued. Petitioner does not contest the blood test.

Petitioner's license was suspended pursuant to section 1547(b) of the Vehicle Code. This section states in pertinent part:

"(b) Suspension for refusal.—

"(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months." 75 Pa.C.S. §1547(b).

In license suspension cases under this section, the Commonwealth must establish that the driver "(1) was arrested for driving under the influence of alcohol [or a controlled substance]; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned

1. Section 1547(a) provides that the driver of a car is deemed to have consented to one or more chemical tests of breath, blood or urine. 75 Pa.C.S. §1547(a).

that a refusal would result in a license suspension." *PennDOT, Bureau of Driver Licensing v. Walsh,* 146 Pa. Commw. 461, 466, 606 A.2d 583, 585, fn. 2 (1992). *Accord PennDOT, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 248-249, 555 A.2d 873, 876 (1989). There is no dispute that petitioner was arrested for driving under the influence of alcohol and/or a controlled substance and was requested to submit to a chemical test. There is also no dispute that petitioner was warned that a refusal to submit to a chemical test would result in the suspension of her license. At issue in this case is whether petitioner's unwillingness to provide a urine sample is a refusal within the meaning of section 1547(b).

Section 1547(a) states that a motorist's consent is implied "to one *or more* chemical tests of breath, blood or urine." 75 Pa.C.S. §1547(a). (emphasis added) In cases where one valid chemical test is administered, a request that the driver submit to a second test *of a different type* is not permissible unless the officer has reasonable grounds for requesting the second test. See *PennDOT, Bureau of Driver Licensing v. Penich,* 112 Pa. Commw. 303, 306, 535 A.2d 296, 298 (1988); *PennDOT, Bureau of Traffic Safety v. Jackson,* 113 Pa. Commw. 253, 256, 536 A.2d 880, 881 (1988). Whether the request for a second different type of test was reasonable is a question of law for the court to decide on the facts of each case. *Penich, supra* at 306, 535 A.2d at 298. Such a request is never reasonable if its only purpose is to "substantiate the accuracy of the initial test...." *Jackson, supra* at 256, 536 A.2d at 881.

In this case, the officer testified that petitioner's erratic behavior led him to believe that she was under the influence of both alcohol and drugs. He testified that he requested

the urine test in addition to the blood test because a memorandum circulated at the police station requested that "we get urine if we suspect drugs." (N.T. at 10.) He stated that he believed the department preferred urine tests because they are more accurate than blood tests in detecting the presence of controlled substances. He testified that he did not know whether a urine test would disclose anything in addition to what would be disclosed in a blood test.

In *Blair v. Commonwealth of Pa.,* 115 Pa. Commw. 293, 539 A.2d 958 (1988), the Pennsylvania Commonwealth Court confronted a similar situation. The arresting officer asked the motorist to submit to both a blood test and urine test. The motorist took the blood test but knocked the vial containing his urine sample into the toilet bowl and refused to provide another sample. The only evidence offered to justify the officer's request for a second test was that the officer thought "Blair appeared to have ingested something other than just alcohol." *Id.* at 298, 539 A.2d at 961. No evidence was presented that the blood test alone was insufficient to determine if Blair had ingested drugs. "Evidence that both a blood and urine test were necessary to determine Blair's blood alcohol content and to detect the presence of controlled substances would have provided reasonable grounds to justify the request for the urine test in this case. However, neither this court nor the trial court is able to infer such a fact on our own. Therefore, we must conclude that the arresting officer did not have reasonable grounds to request that Blair submit to a urine test after he had already provided a blood sample." *Id.* at 298-299, 539 A.2d at 961.

In the instant case, the following evidence was offered to support the reasonableness of the request for the urine

test: the police department's memorandum that requested a urine test if drug use is suspected and the officer's testimony that he believed petitioner was under the influence of more than just alcohol. The memorandum cannot justify the request. The officer testified that he believed the department preferred urine tests in cases of suspected drug use because they are more accurate than blood tests. We have been presented with no other evidence on the reasoning behind this memorandum. Therefore, the purpose of a second request based on this memorandum could only have been to substantiate the accuracy of the initial blood test.

The officer's testimony that petitioner appeared to have ingested drugs is also insufficient justification for the request. As the Commonwealth Court held in *Blair,* in order for the request to be reasonable, there must be some evidence from which the court can infer that the urine test was a necessary complement to the blood test in the detection of controlled substances. *Blair, supra* at 298, 539 A.2d at 961. There is no evidence of that in this case. In fact, the officer testified that he did not know whether a urine test would reveal anything other than what would be revealed in a blood test. (N.T. at 11.) Therefore, we conclude that the officer did not have reasonable grounds to request the urine test after petitioner had provided a blood sample. The order suspending petitioner's driving privilege is overruled.

## ORDER

And now, August 25, 1993, the order suspending petitioner Susan A. George's operator's privilege is overruled.